UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NICHOLAS BRANDT, et al.,<br><br>               Plaintiffs,<br><br>    v.<br><br>VERIZON COMMUNICATIONS, INC., et al.,<br><br>               Defendants. | Case No.18-cv-07575-VKD<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 16 |

Plaintiffs Nicholas Brandt and Gregory James filed this action against Verizon Communications, Inc. ("Verizon"), MCI Communications Services, Inc. ("MCI"), and Does 1-10[1] for: (1) breach of contract, (2) intentional concealment and misrepresentation, (3) promissory fraud, (4) negligent misrepresentation, (5) promissory estoppel, (6) violation of California Labor Code § 970 (misrepresentation), and (7) declaratory judgment that the general releases that plaintiffs signed are unenforceable under California Civil Code § 1668. Dkt. No. 1. Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendants move to dismiss all of plaintiffs' claims as preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, et seq. ("ERISA") and barred by release agreements plaintiffs signed. Dkt. No. 16. The Court heard oral argument on defendants' motion on April 23, 2019. Dkt. No. 24.

---

[1] All named parties have consented to magistrate judge jurisdiction. Dkt. Nos. 6, 15. Naming Doe defendants in a federal action is disfavored. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). If this action proceeds past the pleading stage and information supporting the addition of new defendants arises during discovery, plaintiffs may move for leave to amend to name additional defendants.

This Court has jurisdiction over this diversity action pursuant to 28 U.S.C. § 1332. Dkt. No. 1 ¶¶ 8-12, 14. Having considered the parties' briefs and the arguments made at the hearing, the Court grants the motion to dismiss with leave to amend.

## I.     BACKGROUND

Plaintiffs are residents of California and Arizona and former employees of defendants. [2] Dkt. No. 1 ¶¶ 8-9. Defendants are Delaware corporations that do business and maintain offices in California. *Id.* ¶¶ 10-11. MCI is a subsidiary of Verizon[3] and plaintiffs' direct employer. *Id.* ¶ 11.

In January 2014, Verizon announced the acquisition of Intel Media, Inc. ("Intel Media"). At that time, Mr. Brandt and Mr. James had worked for Intel Media for approximately 18.5 years and 21 years, respectively. *Id.* ¶¶ 2, 19, 29. Following the announcement of the acquisition, plaintiffs attended a meeting hosted by Verizon human resources representatives on January 24, 2014. *Id.* ¶¶ 21-27. At the January 24 meeting, the Verizon representatives explained Verizon's severance benefit. *Id.* ¶ 26. Specifically, the Verizon representatives stated that the severance benefit would equal two weeks of compensation at the employee's ending pay-rate for each year of service. *Id.* The representatives stated that Intel Media employees who chose to work for Verizon would receive full credit under Verizon's severance program for the years they had worked for Intel Media in addition to years worked for Verizon. *Id.* During the presentation, the Verizon representatives did not mention any cap on the number of service years that would be used to calculate the severance benefit. *Id.* ¶ 27.

This severance benefit was a material factor in plaintiffs' decisions to transition to employment with Verizon following the acquisition. *Id.* ¶ 32. In particular, Mr. Brandt says that he expressly relied on information about calculation of the severance benefit and even expressly confirmed that information with Verizon. *Id.* ¶ 24. He emailed Verizon representatives—

---

[2] Paragraph 9 of the complaint alleges that Mr. James resides in Arizona, yet paragraphs 14 and 17 allege that both plaintiffs are California citizens. At the hearing, plaintiffs' counsel clarified that paragraphs 14 and 17 are erroneous and that Mr. James in fact resides in Arizona.

[3] The Court refers to both defendants collectively hereafter as "Verizon."

including those that hosted the January 24 presentation—to confirm that his 18.5[4] years of service at Intel Media would transfer to Verizon, and that the severance benefit was calculated at two weeks per year of service. *Id.* ¶¶ 36-38; *see also id.*, Ex. A at 2. In response, Verizon representatives stated that "[s]ervice credited by Intel as of the Closing date will generally be recognized by Verizon for purposes of eligibility to participate in, vesting and benefit accrual under the following Verizon benefit plans and programs [including] Severance." *Id.*, Ex. A at 2. Verizon's representatives also stated, "The Verizon severance plan offers a severance payment of two weeks of total target compensation (base pay + STI) for every year of service, a prorated STI payment, COBRA subsidy for the terms of the severance and outplacement services." *Id.*, Ex. A at 1. The emails from Verizon representatives did not mention a cap on service years. *Id.* ¶¶ 4, 39.

Ultimately, plaintiffs accepted positions with Verizon. Mr. Brandt was required to relocate from Oregon to California, leaving behind his network of family and friends and other professional opportunities in Oregon. *Id.* ¶ 33. Mr. James remained in Arizona. *Id.* ¶ 9.

In March 2017, Verizon terminated plaintiffs' employment. *Id.* ¶ 6. At this time, Verizon advised plaintiffs that their severance benefits were capped at 17.5 years of service under the Verizon Severance Program (the "severance plan"). *Id.* Verizon declined to increase the amount of severance offered. *Id.* As a condition of receiving their severance payments, Verizon required plaintiffs to sign a general release and waiver of claims (the "severance release"), including a waiver under California Civil Code § 1542. *Id.* ¶ 79. Each plaintiff signed a severance release. *Id.* ¶ 6; *see also id.* ¶ 82.

The complaint is not entirely clear regarding what followed, but at some point, plaintiffs engaged legal counsel who attempted to negotiate with Verizon on their behalf regarding severance payments. *Id.* ¶ 80. Plaintiffs submitted claims to Verizon and filed appeals as required by Verizon's internal dispute resolution process, but Verizon declined to pay any severance

---

[4] Although the emails attached to the complaint state that Mr. Brandt had "over 19 years" of service with Intel Media as of February 2014, the complaint pleads the Mr. Brandt had 18.5 years of services as of January 2014. *Compare* Dkt. No. 1 ¶¶ 29, 73 *with* Dkt. No. 1, Ex. A at 2. The Court accepts the allegations of the complaint as true.

benefit beyond the 17.5-year cap. *Id.* ¶ 6. Mr. James alleges that he is owed a further $63,924.47 in severance pay, and Mr. Brandt alleges that he is owed a further $24,621.69 in severance pay. *Id.* ¶¶ 86-87.

Plaintiffs filed this action on December 17, 2018 and asserted the following claims: (1) breach of contract, (2) intentional concealment and misrepresentation, (3) promissory fraud, (4) negligent misrepresentation, (5) promissory estoppel, (6) violation of California Labor Code § 970 (misrepresentation), and (7) declaratory judgment that the general releases that plaintiffs signed are unenforceable under California Civil Code § 1668. *Id.* ¶¶ 41-84. The Verizon Severance Program is not a party.

## II. LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, a court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A court generally may not consider any material beyond the pleadings when ruling on a Rule 12(b)(6) motion. If matters outside the pleadings are considered, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, a court may consider matters that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Roca v. Wells Fargo Bank, N.A.*, No. 15-cv-02147-KAW, 2016 WL 368153, at *3 (N.D. Cal. Feb. 1, 2016) (quoting Fed. R. Evid. 201(b)). Documents appended to the complaint, incorporated by reference in the complaint, or which

properly are the subject of judicial notice may be considered along with the complaint when deciding a Rule 12(b)(6) motion. *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018); *see also Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

## III.    DISCUSSION

### A.    Judicial Notice / Documents Incorporated in the Complaint

Defendants submit the declaration of Mark Schoenecker and 14 exhibits for consideration in support of their motion to dismiss. The exhibits consist of: the Verizon Severance Program as of March 1, 2016; a document entitled "Your Severance Plan" summarizing the severance plan; a "Frequently Asked Questions" ("FAQ") brochure; a letter from plaintiffs' counsel to Verizon; the signed severance releases; and documents relating to plaintiffs' claims and appeals filed pursuant to the severance plan. Defendants do not ask the Court to take judicial notice of these documents, but rather argue that the Court may properly consider these documents because the complaint "explicitly or implicitly makes reference to these documents." Dkt. No. 16 at 3 n. 2.

A document may be deemed part of the complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Khoja*, 899 F.3d at 1002 (citing *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)). However, "the mere mention of the existence of a document is insufficient to incorporate the contents of a document" under *United States v. Ritchie*. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (citing *Ritchie*, 342 F.3d at 908–09).

With respect to plaintiffs' seventh claim for declaratory judgment that the severance releases are unenforceable under California law, the releases themselves necessarily form the basis of that claim, and therefore the Court may properly consider them. *Khoja*, 889 F.3d at 1002. With respect to plaintiffs' remaining claims based on breach of contract and fraud or misrepresentation, plaintiffs take the view that those claims arise out of alleged oral and written promises Verizon made to plaintiffs, and these promises may or may not be part of the severance plan itself. To determine whether any of these claims are preempted under ERISA § 502(a)(1)(B), the Court may examine the complaint, the state law upon which plaintiffs' claims are based, and the various plan

documents. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 211 (2004). Accordingly, the Court will consider both the severance plan and the severance releases in resolving defendants' motion.

The remaining documents are not so clearly incorporated in the complaint. The Court cannot say that any of those documents form the basis of any of plaintiffs' claims as currently pled. The complaint makes no mention of the FAQ brochure. Although paragraph 40 of the complaint alleges that Mr. Brandt was not provided the "Your Severance Program" document until after the layoff process began, paragraph 6 alleges that plaintiffs made claims and appeals as required by Verizon's internal dispute-resolution process, and paragraph 80 alleges that plaintiffs' counsel was in communication with Verizon concerning the severance cap, these allegations appear to be a "mere mention[s]," and the documents to which they refer are not properly incorporated into the complaint. *Coto Settlement*, 593 F.3d at 1038. The Court is reluctant to take judicial notice separately of those documents and will not do so on this motion. *Khoja*, 899 F.3d at 1002 ("[I]f the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint. Otherwise, defendants could use the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims.").

## B.     ERISA Preemption

Verizon contends that all of plaintiffs' claims are expressly preempted under 29 U.S.C. § 1144(a) (ERISA § 514(a)) or preempted under 29 U.S.C. § 1132(a) (ERISA § 502(a)) as conflicting with ERISA's nationwide civil enforcement scheme. The parties do not appear to dispute that Verizon's severance plan qualifies as an employee benefit plan under ERISA.

### 1.     Section 1144(a) express preemption

ERISA expressly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan," and extends to state law and common law causes of action. 29 U.S.C. § 1144(a); *see, e.g.*, *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47–48 (1987). While the Supreme Court has held that "the words 'relate to' should be construed expansively," *Fort Halifax Packing Co, Inc. v. Coyne*, 482 U.S. 1, 8 (1987), it more recently has recognized that ERISA's broad preemption is not without limits, rejecting "'uncritical literalism' in applying" the

"relate to" standard. *Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 943 (2016) (quoting *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.* ("*Travelers*"), 514 U.S. 645, 656 (1995)). To provide some "workable standards" for determining the scope of § 1144(a), the Supreme Court has identified two categories of state laws that "relate to" an ERISA plan: (1) laws that have a "reference to" an ERISA plan, and (2) laws that have "an impermissible 'connection with'" an ERISA plan. *Id.*

The Ninth Circuit has explained that a state law has an impermissible "reference to" ERISA plans if it "acts immediately and exclusively upon ERISA plans" or if "the existence of ERISA plans is essential to the law's operation." *Paulsen v. CNF, Inc.*, 559 F.3d 1061, 1082 (9th Cir. 2009) (internal quotations omitted) (quoting *Cal. Div. of Labor Standards Enf't v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 325 (1997)). A state law has "an impermissible connection with" ERISA plans if the law "governs a central matter of plan administration" or "interferes with nationally uniform plan administration." *The Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 666 (9th Cir. 2019) (quoting *Gobeille,* 136 S. Ct. at 943) (internal quotations omitted).

### a. Claims 2, 3, 4, and 6

Plaintiffs' claims 2, 3, 4, and 6 for intentional concealment and misrepresentation, promissory fraud, negligent misrepresentation, and violation of California Labor Code § 970 all allege some version of fraudulent or negligent misrepresentation by Verizon.[5] These claims are premised on alleged misrepresentations that occurred prior to plaintiffs' employment with Verizon, and plaintiffs contend that the misrepresentations induced them to accept that employment with Verizon. Dkt. No. 1 ¶ 32. While the alleged misrepresentations concerned the severance benefit Verizon offered, plaintiffs' claims are based on common law intentional and negligent misrepresentation principles and California Labor Code § 970, which prohibits making "knowingly false representations" about "[t]he kind, character, or existence of such work" to persuade a person to switch employers. These laws do not act immediately and exclusively on ERISA plans, and the existence of ERISA plans is not essential to these laws' operation. Nor do

---

[5] The intended distinctions between these claims is not immediately apparent to the Court.

7

they purport to govern or interfere with a central matter of plan administration or national uniformity in administration of such plans. *See, e.g.*, *Depot*, 915 F.3d at 666–67 (finding no preemption of state law claims based on insurance companies' alleged fraudulent and negligent misrepresentations about their ERISA plans to induce the employers to subscribe to the plans); *Paulsen*, 559 F.3d at 1082 (finding no preemption of employees' state law claims against actuarial firm for professional negligence in certifying that ERISA plan was adequately funded).

Similar claims have been found not preempted in other jurisdictions. *See Stevenson v. Bank of New York Co., Inc.*, 609 F.3d 56, 59–61 (2d Cir. 2010) (state law claims for breach of contract, promissory estoppel, unjust enrichment, negligent misrepresentation, fraud, and tortious interference with contract based on oral and written representations concerning plaintiff's benefits not preempted); *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 84–85 (3rd Cir. 2012) (state law claims based on misrepresentations made prior to establishment of ERISA plans and that induced plaintiffs to participate in ERISA plans not preempted under § 1144(a)); *Smith v. Texas Children's Hosp.*, 84 F.3d 152 (5th Cir. 1996) (state law claims for fraudulent inducement and breach of contract based on misrepresentation that induced plaintiff to leave previous employment and join defendant's employment not preempted); *McCarthy v. Ameritech Publ'g, Inc.*, 763 F.3d 469 (6th Cir. 2014) (finding fraud-inducement claim not preempted because plaintiff did not seek to recover an ERISA plan benefit, but rather fair compensation for work performed); *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 860–65 (6th Cir. 2007) (state claims for fraudulent misrepresentation and innocent misrepresentation based on misrepresentation that induced plaintiff to accept employment and become member of pension plan not preempted under section 1144(a) or section 1132(a)); *Wilson v. Zoellner*, 114 F.3d 713, 721 (8th Cir. 1997) (state law claim for negligent misrepresentation not preempted because it was directed to pre-plan tortious conduct); *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 991–92 (10th Cir. 1999) (fraudulent inducement claim not preempted because actions occurred before defendant became a fiduciary).

Verizon principally relies on a line of cases that pre-dates the Supreme Court's 1995 *Travelers* decision, in which the Supreme Court revisited its prior efforts to define a workable

scope for ERISA's preemption clause. *See* Dkt. No. 16 at 6–7 (citing *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724 (1985); *Pilot Life*, 481 U.S. 31 (1987)); Dkt. No. 22, at 5, 8 (citing *Olson v. Gen. Dynamics Corp.*, 960 F.2d 1418 (9th Cir. 1991); *Davidian v. S. Cal. Meat Cutters Union & Food Emps. Benefit Fund*, 859 F.2d 134 (9th Cir. 1988)). The Ninth Circuit has expressly acknowledged this shift in Supreme Court precedent. *See Graham v. Balcor Co.*, 146 F.3d 1052, 1054 (9th Cir. 1998) ("More recently, however, the [Supreme] Court has moved away from a literal reading of 'relate to,' towards a more narrow interpretation of the phrase and its preemptive scope."). Verizon does not.[6] The Court concludes that claims 2, 3, 4 and 6 are not expressly preempted under 29 U.S.C. § 1144(a).[7] However, the Court does not conclude that the relief plaintiffs seek—which is not clearly pled—is a form of relief to which they would be entitled if their claims succeed.

### b.     Claim 7

Plaintiffs' seventh claim for relief seeks a declaration that the releases plaintiffs signed are not enforceable against them by operation of California Civil Code § 1668. Dkt. No. 1 ¶¶ 78-84. Section 1668 states: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." In other words, the statute prohibits exculpation from concurrent or future torts, where at least one element of the tort occurs concurrently or after the signing of the contract. *SI 59 LLC v. Variel Warner Ventures, LLC*, 29 Cal. App. 5th 146, 152–53 (2018); *see also Blankenheim v. E.F. Hutton & Co.*, 217 Cal. App. 3d 1463, 1472–73 (1990) (holding that a party may not contract away liability for negligent misrepresentation); *Simmons v. Ratterree Land Co.*, 217 Cal. 201, 204 (1932) ("It is settled beyond doubt, manifestly on sound grounds of justice, that a seller cannot escape liability for his own fraud or false representations by the insertion of provisions such as are embodied in

---

[6] Verizon did not cite *Olson* or *Davidian* in its opening brief, but did so only in its reply brief, even though it contended at the hearing that these cases continue to represent controlling Ninth Circuit authority on the question of preemption.

[7] Verizon did not move to dismiss on the ground that claims 2, 3, 4, and 6 fail to state a claim upon which relief may be granted.

the contract of sale herein. . . .  Fraud in the inducement of a contract vitiates the entire agreement and destroys that consent which is essential to the existence of a valid contract.").

As with plaintiffs' state law misrepresentation claims, there is nothing about section 1668 that acts immediately and exclusively on ERISA plans, and the existence of ERISA plans is not essential to the statute's operation.  Likewise, nothing in the statute governs or interferes with a central matter of plan administration or national uniformity in administration of such plans. Accordingly, claim 7 is not expressly preempted under 29 U.S.C. § 1144(a).

### c.     Claims 1 and 5

Plaintiffs' first and fifth claims for breach of contract and promissory estoppel differ from plaintiffs' misrepresentation claims.  Dkt. No. 1 ¶¶ 41-46, 67-71.  These claims plead that Verizon made certain representations about the terms of the Verizon severance plan, and plaintiffs now seek to enforce the terms as represented to them.  However, it is not clear whether plaintiffs claim a contract or enforceable promise separate from the Verizon severance plan, or whether they assert that the existing plan must be enforced to produce the payment they claim they are owed.  In any event, as currently pled, claims 1 and 5 appear to depend on the existence of an ERISA plan that includes severance benefits.  Those claims are expressly preempted on that basis under 29 U.S.C. § 1144(a).[8]

### 2.     Section 1132(a) conflict preemption

Having determined that claims 2, 3, 4, 6, and 7 are not expressly preempted under § 1144(a), the Court considers whether they are instead preempted under § 1132(a) as conflicting with ERISA's nationwide civil enforcement scheme.

ERISA provides for "a comprehensive civil enforcement scheme" designed "to provide a uniform regulatory regime over employee benefit plans."  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quoting *Pilot Life*, 481 U.S. at 54).  Consequently, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the

---

[8] Verizon did not move to dismiss on the ground that claims 1 and 5 fail to state a claim upon which relief may be granted.  The Court notes, however, that claim 1 does not plead the terms of the alleged contract.

clear congressional intent to make the ERISA remedy exclusive" and is barred by conflict preemption. *Id.* at 209. However, a state law claim is not preempted if it reflects "an attempt to remedy [a] violation of a legal duty independent of ERISA." *Depot*, 915 F.3d at 668 (citing *Aetna Health*, 542 U.S. at 214). A state law claim is based on an independent legal duty when it is "in no way based on an obligation under an ERISA plan" and would exist regardless of whether an ERISA plan existed. *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 950 (9th Cir. 2009).

The duties implicated in plaintiffs' state law fraudulent and negligent misrepresentation claims do not arise from any obligations under an ERISA plan, but rather from an independent duty not to intentionally or negligently make misrepresentations upon which a plaintiff relies in taking some action that ultimately results in injury. *Depot*, 915 F.3d at 667. That duty is independent of the duties ERISA imposes and would exist regardless of whether any ERISA plan existed. *Id.* "ERISA does not have an enforcement mechanism that regulates misrepresentations" such as the ones made during the parties' employment negotiations, and plaintiffs' misrepresentation claims are not barred by conflict preemption. *See id.*

With respect to plaintiffs' seventh claim for declaratory relief under California Civil Code § 1668, that statute prohibits contracts that exempt a party from responsibility for fraud or willful injury to another as against the public policy that the statute embodies. Cal. Civ. Code § 1668. Section 1668 thus implicates an independent duty that exists irrespective of any ERISA plan.

Accordingly, the Court finds that claims 2, 3, 4, 6, and 7 are not preempted under 29 U.S.C. § 1132(a), as they do not seek any state law remedies that duplicate, supplement, supplant, or otherwise conflict with ERISA's civil enforcement scheme.

## C. Release of Claims

As an independent basis for dismissal of this action, Verizon contends that plaintiffs' claims are barred as a matter of law because each executed a release of all claims against Verizon as a condition of receiving severance benefits. Plaintiffs opposed dismissal on this ground, citing California Civil Code § 1668. As discussed above, the Court may consider the releases without converting Verizon's motion into a motion for summary judgment because the releases are

11

properly considered part of plaintiffs' own pleading. *See supra* Section III.A.

Plaintiffs signed identical releases pursuant to which they released all claims to benefits or damages, including those under common law, relating to or arising out of plaintiffs' employment or separation from employment with Verizon (with the exception of certain claims not relevant to or asserted in the action here). Dkt. No. 16-6 at 2–3; Dkt. No. 16-7 at 2–3. The releases expressly state: "I agree that I have no right to receive severance benefits or compensation other than the benefits and compensation described in Attachment A." Dkt. No. 16-6 at 3; Dkt. No. 16-7 at 3. Plaintiffs do not dispute that, but for the purported operation of section 1668, the terms of the releases encompass all claims asserted in the complaint.

As explained above, section 1668 prohibits a party from avoiding liability for concurrent or future torts involving its fraud or misrepresentation. *See SI 59*, 29 Cal. App. 5th at 152–53; *Blankenheim*, 217 Cal. App. 3d at 1472–73; *see also Simmons*, 217 Cal. at 204. For at least some of their claims, plaintiffs contend that Verizon made misrepresentations that induced plaintiffs to accept employment with Verizon. Dkt. No. 1 ¶¶ 4-6, 42-82. They contend that the releases they signed prior to accepting severance benefits should not be enforceable as to those claims because they were required to agree in advance to sign a release in the future as a condition of receiving future severance benefits. Dkt. No. 21 at 13. Plaintiffs do not plead facts supporting their contention that Verizon improperly required them to sign contracts releasing future claims of fraud. Rather, the complaint makes clear that plaintiffs did not sign the releases until they were offered severance benefits upon their termination from employment. At that time, they were aware of (1) Verizon's severance cap provision, (2) the alleged misrepresentations Verizon had made about how severance payments would be calculated, and (3) the difference between the severance payments Verizon was offering and the payments plaintiffs believed they should have received. *See* Dkt. No. 1 ¶¶ 6, 80, 82. Plaintiffs signed the releases anyway. Critically, at the time they signed the releases, plaintiffs had obtained legal counsel who had been communicating on their behalf with Verizon regarding their severance benefits. *Id.* ¶ 80. Nothing in the complaint suggests that plaintiffs signed the releases in the circumstances prohibited by section 1668, or that the releases are otherwise unenforceable.

As to plaintiffs' other claims, which do not depend on allegations that Verizon made misrepresentations, plaintiffs offer no explanation for how section 1668 relieves them of the terms of the releases. At the hearing, plaintiffs argued that they signed the severance releases under economic duress. The complaint, however, contains no factual allegations that support such a claim.

For these reasons, the Court finds that all of plaintiffs' claims are barred as a matter of law because they have released all such claims.

### D. Leave to Amend

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id*. at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

On the present record, the Court cannot conclude that some or all of the deficiencies described above could not be cured by amendment, and for this reason the Court will afford plaintiffs leave to amend. However, the amended complaint should only assert claims for which plaintiffs have a Rule 11 basis.

## IV. CONCLUSION

For the foregoing reasons, the Court grants Verizon's motion to dismiss as to all claims, with leave to amend. If plaintiffs choose to file an amended complaint, they must do so by **May 29, 2019**.

United States District Court
Northern District of California

**IT IS SO ORDERED.**

Dated: May 15, 2019

_____
VIRGINIA K. DEMARCHI
United States Magistrate Judge