United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NICHOLAS BRANDT, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>VERIZON COMMUNICATIONS, INC., et al.,<br><br>    Defendants. | Case No.18-cv-07575-VKD<br><br>**ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 30 |

Plaintiffs Nicholas Brandt and Gregory James assert the following claims against defendants Verizon Communications, Inc. ("Verizon") and MCI Communications Services, Inc. ("MCI") for: (1) intentional concealment and misrepresentation, (2) promissory fraud, (3) negligent misrepresentation, (4) violation of California Labor Code § 970 (misrepresentation); (5) promissory estoppel, and (6) declaratory judgment that the general releases that plaintiffs signed are unenforceable under California Civil Code § 1668. Dkt. No. 29. Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendants move to dismiss all of plaintiffs' claims in the first amended complaint ("FAC") as barred by release agreements plaintiffs signed. Dkt. No. 30. The Court heard oral argument on defendants' motion on August 13, 2019. Dkt. No. 35.

This Court has jurisdiction over this diversity action pursuant to 28 U.S.C. § 1332. Dkt. No. 29 ¶¶ 8-12, 13. Having considered the parties' briefs and the arguments made at the hearing, the Court grants the motion to dismiss without leave to amend.

## I. BACKGROUND

### A. Factual Background

Plaintiffs are residents of California and Arizona and former employees of defendants.[1] Dkt. No. 29 ¶¶ 8-9. Defendants are Delaware corporations that do business and maintain offices in California. *Id.* ¶¶ 10-11. MCI is a subsidiary of Verizon[2] and was plaintiffs' direct employer. *Id.* ¶ 11.

In January 2014, Verizon announced the acquisition of Intel Media, Inc. ("Intel Media"). At that time, Mr. Brandt and Mr. James had worked for Intel Media for approximately 18.5 years and 21 years, respectively. *Id.* ¶¶ 2, 19, 28. Following the announcement of the acquisition, on January 24, 2014, plaintiffs attended a meeting hosted by Verizon human resources representatives. *Id.* ¶¶ 20-26. At the meeting, the representatives explained Verizon's severance benefit. *Id.* ¶ 25. Specifically, the Verizon representatives stated that the severance benefit would equal two weeks of compensation at the employee's ending pay-rate for each year of service. *Id.* The representatives stated that Intel Media employees who chose to work for Verizon would receive full credit under Verizon's severance program for the years they had worked for Intel Media in addition to years worked for Verizon. *Id.* During the presentation, the Verizon representatives did not mention any cap on the number of service years that would be used to calculate the severance benefit. *Id.* ¶ 26.

This severance benefit was a material factor in plaintiffs' decisions to accept employment with Verizon following the acquisition. *Id.* ¶ 31. In particular, Mr. Brandt says that he expressly relied on information about calculation of the severance benefit and even expressly confirmed that information with Verizon before accepting employment. *Id.* ¶ 32. He emailed Verizon representatives—including those that hosted the January 24 presentation—to confirm that his 18.5[3] years of service at Intel Media would transfer to Verizon, and that the severance benefit was

---

[1] Paragraph 9 of the FAC alleges that Mr. James resides in Arizona, yet paragraph 13 alleges that both plaintiffs are California citizens. At the hearing on defendants' first motion to dismiss, plaintiffs' counsel clarified that Mr. James in fact resides in Arizona. Dkt. No. 24.

[2] For convenience, the Court refers to both defendants collectively hereafter as "Verizon."

[3] Although the emails attached to the FAC state that Mr. Brandt had "over 19 years" of service

2

calculated at two weeks per year of service. *Id.* ¶¶ 33-38; *see also id.*, Ex. A at 2. In response, Verizon representatives stated that "[s]ervice credited by Intel as of the Closing date will generally be recognized by Verizon for purposes of eligibility to participate in, vesting and benefit accrual under the following Verizon benefit plans and programs [including] Severance." *Id.*, Ex. A at 2. Verizon's representatives also stated, "The Verizon severance plan offers a severance payment of two weeks of total target compensation (base pay + STI) for every year of service, a prorated STI payment, COBRA subsidy for the terms of the severance and outplacement services." *Id.*, Ex. A at 1. The emails from Verizon representatives did not mention a cap on service years. *Id.* ¶¶ 4, 38. Shortly before their deadline to accept Verizon's offer of employment, plaintiffs received an email that included a link to the Verizon Severance Plan ("the severance plan"). *Id.* ¶ 40. Plaintiffs did not read the severance plan. *Id.* ¶ 41.

Ultimately, plaintiffs accepted positions with Verizon. Mr. Brandt was required to relocate from Oregon to California, leaving behind his network of family and friends and other professional opportunities in Oregon. *Id.* ¶ 32. Mr. James remained in Arizona. *Id.* ¶ 9.

In March 2017, Verizon terminated plaintiffs' employment. *Id.* ¶ 6. In connection with the termination, Verizon advised plaintiffs that their severance benefits were capped at 17.5 years of service under the severance plan. *Id.* Verizon declined to increase the amount of severance offered. *Id.* As a condition of receiving their severance payments, Verizon required plaintiffs to sign a general release and waiver of claims ("the severance release"), including a waiver under California Civil Code § 1542. *Id.* ¶ 76. Each plaintiff signed a severance release, which they say they were forced to do based on economic duress. *Id.* ¶ 6; *see also id.* ¶ 79.

The FAC is not entirely clear regarding what followed, but at some point, plaintiffs engaged legal counsel who attempted to negotiate with Verizon on their behalf regarding severance payments. *Id.* ¶ 77. Plaintiffs submitted claims to Verizon and filed appeals as required by Verizon's internal dispute resolution process, but Verizon declined to pay any severance

---

with Intel Media as of February 2014, the FAC pleads the Mr. Brandt had 18.5 years of services as of January 2014. *Compare* Dkt. No. 29 ¶¶ 28, 64 *with* Dkt. No. 29, Ex. A at 2. The Court accepts the allegations of the FAC as true.

3

benefit beyond the 17.5-year cap. *Id.* ¶ 6. Mr. James alleges that he is owed a further $63,924.47 in severance pay, and Mr. Brandt alleges that he is owed a further $24,621.69 in severance pay. *Id.* ¶¶ 87-88.

### B. Procedural Background

Plaintiffs filed this action on December 17, 2018. Dkt. No. 1. On May 15, 2019, the Court granted defendants' motion to dismiss pursuant to Rule 12(b)(6), finding that plaintiffs' claims for breach of contract and promissory estoppel were preempted under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1144(a), and that the remaining claims were barred by the severance releases. Dkt. No. 27. The Court granted plaintiffs leave to amend. *Id.* at 11–13. Plaintiffs filed the FAC on May 28, 2019, which is the operative complaint and the subject of defendants' second motion to dismiss. Dkt. No. 29.

## II. LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, a court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A court generally may not consider any material beyond the pleadings when ruling on a Rule 12(b)(6) motion. If matters outside the pleadings are considered, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, a court may consider matters that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Roca v. Wells Fargo Bank, N.A.*, No. 15-cv-02147-

1 KAW, 2016 WL 368153, at *3 (N.D. Cal. Feb. 1, 2016) (quoting Fed. R. Evid. 201(b)).
Documents appended to the complaint, incorporated by reference in the complaint, or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Rule 12(b)(6) motion. *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018); *see also Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

## III. DISCUSSION

### A. Plaintiffs' Amended Allegations

Plaintiffs' sixth claim for relief seeks a declaration that the severance releases plaintiffs signed are not enforceable against them by operation of California Civil Code § 1668. Dkt. No. 29 ¶¶ 75-85. Section 1668 states: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." In other words, a party may not exempt itself from liability for concurrent or future torts, where at least one element of the tort occurs concurrently or after the signing of the contract. *SI 59 LLC v. Variel Warner Ventures, LLC*, 29 Cal. App. 5th 146, 152–53 (2018); *see also Blankenheim v. E.F. Hutton & Co.*, 217 Cal. App. 3d 1463, 1472–73 (1990) (holding that a party may not contract away liability for negligent misrepresentation); *Simmons v. Ratterree Land Co.*, 217 Cal. 201, 204 (1932) ("It is settled beyond doubt, manifestly on sound grounds of justice, that a seller cannot escape liability for his own fraud or false representations by the insertion of provisions such as are embodied in the contract of sale herein. . . . Fraud in the inducement of a contract vitiates the entire agreement and destroys that consent which is essential to the existence of a valid contract.").

The Court previously dismissed all of plaintiffs' claims as barred as a matter of law because plaintiffs released all such claims in exchange for receiving severance benefits. Dkt. No. 27 at 11–13. In dismissing plaintiffs' claims, the Court held that section 1668 did not apply because plaintiffs did not sign the releases until Verizon offered them severance benefits upon termination, at which time plaintiffs were aware of the severance cap provision, the alleged misrepresentations concerning calculation of severance payments, and the fact that the amount of

5

severance Verizon offered was less than plaintiffs believed they were owed. *Id.* at 12. However, because plaintiffs represented at the hearing that they signed the releases under economic duress (which they had not pled), the Court granted leave to amend the complaint to add those allegations. *Id.* at 13.

Plaintiffs' FAC now includes allegations regarding the purported economic duress. Plaintiffs plead that they were "bound to fulfill the pre-condition of signing the form General Release" in order to receive their accrued severance compensation, and that "[t]heir only alternative was to engage in uncertain, costly and lengthy litigation with Verizon at a time when they would be unemployed and without a source of income from wages, an unacceptable alternative to receiving a significant portion of the promised severance benefits." Dkt. No. 29 ¶ 78. Specifically, plaintiffs plead that they were under serious duress because they faced "potentially extended unemployment" as the result of poor re-employment prospects due to their ages, which were "well beyond the age range within which technology companies regularly seek engineers." *Id.* ¶ 79. As a result, plaintiffs say that they expected to face personal financial hardship from "extended unemployment and minimal income from unemployment insurance," and therefore they signed the releases. *Id.*

Defendants move to dismiss the FAC on the basis that plaintiffs have released all claims. Specifically, defendants contend that (1) the severance releases do not violate section 1668 as a matter of law, (2) plaintiffs failed to adequately allege economic duress, and (3) the severance releases are supported by adequate consideration.

**B. Whether the Court Should Decline to Consider the Severance Releases at the Pleading Stage**

As a threshold matter, plaintiffs argue that it would be improper for the Court to dismiss their claims on the basis of the severance releases at the pleading stage because the existence and operation of the releases are matters that concern an affirmative defense that plaintiff should not have to anticipate in their FAC. Dkt. No. 32 at 7, 10, 16–17. This argument is not well-taken.

In granting Verizon's first motion to dismiss, the Court observed that plaintiffs seek a declaration that the severance releases they signed are unenforceable. The releases themselves are

6

the basis for plaintiffs' own claim for relief; they are not merely an affirmative defense raised by Verizon.[4] Dkt. No. 27 at 5. Plaintiffs plead essentially the same claim for declaratory relief in the FAC. Dkt. No. 29 ¶¶ 75-85. Thus, as before, the severance releases are an integral part of plaintiffs' own claim and not merely an affirmative defense.

### C. Application of California Civil Code § 1668

Defendants argue that the FAC fails to cure the main defect of the original complaint: that plaintiffs did not plead any allegations supporting their theory that the releases improperly absolve Verizon from liability for concurrent or future fraud claims. Dkt. No. 30 at 7–9.

In the FAC, plaintiffs now plead that they were required to "pre-agree" to the severance releases. Specifically, upon accepting employment with Verizon in February 2014, plaintiffs say they unknowingly agreed to sign releases in the future as a condition of receiving severance benefits in the event they were terminated. Dkt. No. 29 ¶¶ 76, 77, 80 ("Plaintiff[s] had unwittingly committed themselves to executing such a General Release in accepting employment with Verizon in 2014 as a pre-condition of receiving any severance compensation whatsoever. . . . The act of actually executing that General Release was effectively a formality pre-ordained by plaintiff[s'] acceptance of employment with Verizon in 2014 and, derivatively, acceptance of the pre-condition of signing a General Release to receive accrued severance benefits."). Plaintiffs' acknowledgment in 2014 that a future award of severance benefits would require signing a release is not the equivalent of releasing Verizon *in advance* for future intentional wrongs it might commit. Rather, in 2017, when they were terminated, plaintiffs had a choice: (a) receive severance benefits and sign releases releasing claims against Verizon, or (b) refuse to sign the releases, forego the severance benefits being offered, and dispute the amount of benefits owed. None of the allegations in the FAC plausibly supports plaintiffs' theory that they effectively had already signed the releases when they were hired in 2014.

In opposing Verizon's motion to dismiss, plaintiffs attempt a new argument: they say that when Verizon refused to pay severance benefits for years of service beyond the 17.5 year cap, it

---

[4] As plaintiffs do not dispute the contents or authenticity of the releases, the Court took judicial notice of them, even though they are not attached to the complaint or the FAC.

7

effectively "ratified" its earlier misrepresentations about the severance benefits and that this ratification transformed the earlier misrepresentation into a misrepresentation concurrent with the signing of the severance releases, thereby implicating the prohibitions of section 1668. Dkt. No. 32 at 14 ("Provided with the opportunity to remedy that past wrong, defendants instead chose to refuse to take any corrective action or offer plaintiffs new consideration, instead choosing to acknowledge and ratify the original wrong by their inaction . . . ."); *see also* Dkt. No. 32 at 15 ("[T]he 2017 refusal of defendants to correct that wrongful act when brought to their attention is a ratification which continued the original wrongfulness, bringing it into the immediate time-frame when plaintiffs needed to either put pen to paper or risk the forfeiture of a major benefit."). This ratification theory is not pled in the FAC, but even if it were, such an argument could be thrown up to defeat virtually any release simply by characterizing the released party's past conduct as "ratified" by its current position, and therefore "concurrent" with the release. Plaintiffs' amended allegations do not plausibly assert that the purpose of the severance releases was to immunize Verizon for concurrent or future fraud.

### D. Economic Duress

As described above, the FAC includes allegations that plaintiffs signed the severance releases under economic duress. Dkt. No. 29 ¶¶ 78-79. Plaintiffs raised their economic duress argument during the April 23, 2019 hearing on Verizon's first motion to dismiss in the context of a discussion of plaintiffs' sixth claim for a declaratory judgment that the releases are unenforceable under section 1668. Dkt. No. 24. However, as pled, plaintiffs' economic duress allegations do not fall within the scope of that statute; instead, they describe a separate basis for concluding that plaintiffs should not be bound by the releases they signed as to the claims pled in the FAC. Dkt. No. 32 at 12.

Economic duress is an equitable doctrine which requires plaintiffs to plead that (1) Verizon engaged in a sufficiently coercive wrongful act; (2) a reasonably prudent person in plaintiffs' economic position would have had no reasonable alternative but to succumb to Verizon's coercion; (3) Verizon knew of plaintiffs' economic vulnerability; and (4) Verizon's coercive wrongful act actually caused or induced plaintiffs to sign the severance releases. *Tanner v. Kaiser*

8

*Found. Health Plan, Inc.*, No. C 15-02763-SBA, 2016 WL 4076116, at *4 (N.D. Cal. Aug. 1, 2016); *Johnson v. Int'l Bus. Machines Corp.*, 891 F. Supp. 522, 529 (N.D. Cal. 1995). Verizon argues that plaintiffs do not plausibly plead facts supporting any of these elements. Dkt. No. 30 at 9–12.

### 1. Coercive wrongful act

Plaintiffs argue that Verizon's misrepresentations about the severance cap constituted a sufficiently coercive wrongful act to support a claim of economic duress. Dkt. No. 32 at 14–15. The Court previously concluded that Verizon's alleged misrepresentations might support a claim that Verizon fraudulently induced or wrongfully coerced plaintiffs to *accept employment* with Verizon in 2014. *See* Dkt. No. 27 at 13. But, as discussed above, plaintiffs have not identified a coercive wrongful act relating to the *signing of the releases* in 2017. *See supra* Section III.C.

### 2. Reasonable alternatives

Even if plaintiffs had identified a coercive wrongful act associated with the releases, plaintiffs must also plead facts showing that "a reasonably prudent person subject to [such wrongful] act may have no alternative but to succumb" to the coercion "when the only other alternative is bankruptcy or financial ruin." *Johnson*, 891 F. Supp. at 529 (quoting *Richard & Whillock, Inc. v. Ashton Dev., Inc.*, 157 Cal. App. 3d 1154 (1984)). Courts employ an objective test to determine if "reasonable alternatives" exist. *Id.*

Plaintiffs allege that, without severance payments from Verizon, they faced unemployment and potential difficulty in obtaining new employment because of their age. Dkt. No. 29 ¶¶ 78-79. In their opposition to the motion to dismiss, they say they faced the "immediate loss of all income other than unemployment insurance benefits and a need to start the consumption of any accrued savings and/or the liquidation of assets, with early withdrawal penalties in the case of accrued retirement assets," although these specific assertions are not included in the FAC. Dkt. No. 32 at 12–13. Verizon argues that these allegations do not rise to the level of economic duress. Dkt. No. 30 at 10–11; Dkt. No. 33 at 5.

The Court agrees that the allegations of the FAC describe economic difficulties that are a far cry from bankruptcy or financial ruin. "That plaintiff did not have a job and needed the money

9

offered under the agreement to pay his bills does not equate to economic duress. The same could be said of almost any case where an employee is discharged and offered severance pay." *Perez v. Uline, Inc.*, 157 Cal. App. 4th 953, 960 (2007). Plaintiffs' claim is subject to dismissal if they do not plead allegations that support this element. *Cf. Doe 1 v. Morrison & Foerester LLP*, No. 3:18-cv-02542-JSC, Dkt. No. 83, at 7–12 (N.D. Cal. May 1, 2019) (denying motion for judgment on the pleadings on economic duress rescission claim because "the Court cannot say as a matter of law that a reasonably prudent woman who was eight months pregnant, was facing the loss of both her job and her paid maternity leave, was the primary wage-earner in her family, and could [no] longer afford her current home, would have had reasonable alternatives to signing the release and accepting the severance package Defendant offered").

### 3. Knowledge of plaintiffs' economic vulnerability

"A defendant's knowledge of a plaintiff's economic exigencies is a necessary component of liability of economic duress." *Johnson*, 891 F. Supp. at 530 (internal quotation marks omitted). Plaintiffs have not pled that Verizon knew that they would inevitably be subject to "imminent financial ruin" if they did not sign the severance release agreement. *See Tanner*, 2016 WL 4076116, at *4. The mere fact that Verizon knew that plaintiffs had been laid off and "needed" the money offered under the agreement is not sufficient. *See Perez*, 157 Cal. App. 4th at 959–60 (economic duress was not present when defendant knew plaintiff needed the money offered under the severance agreement to pay his bills).

Plaintiffs have failed to plead facts supporting this element of economic duress. Nothing in the FAC suggests that Verizon knew of plaintiffs' "particular economic circumstances nor of any peculiar economic vulnerability." *Johnson*, 891 F. Supp. at 530. At the hearing, plaintiffs pointed to a statement Verizon's counsel allegedly made to plaintiffs' counsel to the effect that plaintiffs were "over a barrel" because they would not receive severance benefits unless they signed releases. Plaintiffs suggest that the Court should infer from this allegation that Verizon knew of plaintiffs' particular economic circumstances. Such an inference is simply not reasonable, particularly where plaintiffs do not plead that either of them ever shared information about their economic circumstances with Verizon. *Iqbal*, 556 U.S. at 679 ("Determining whether

10

a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'") (internal citation omitted).

### 4. Inducement by coercive wrongful act

Plaintiffs acknowledge that they were aware of Verizon's severance cap, had the benefit of legal counsel, and opted to sign the releases anyway. They contend that by requiring a signed release as a condition for the payment of severance benefits, Verizon induced them to sign the releases. This argument is premised on the thesis that requiring signed releases was itself a coercive wrongful act, which the Court has already rejected. Plaintiffs' allegations on this point fail for at least the same reasons.

The Court concludes that plaintiffs have not adequately pled economic duress sufficient to invalidate the severance releases or render them unenforceable.

## E. Lack of Adequate Consideration

The FAC includes a claim that the severance releases are unenforceable for lack of consideration. Dkt. No. 29 ¶ 83. Defendants argue that plaintiffs received severance benefits as consideration for the releases, and that the releases themselves so state. Dkt. No. 30 at 12–13. Plaintiffs respond that the severance payments were not new consideration for the releases but were owed to plaintiffs by operation of their employment agreements. Dkt. No. 32 at 12, 14.

California Civil Code § 1541 provides that "[a]n obligation is extinguished by a release therefrom given to the debtor or the released party by the creditor or releasing party, upon a new consideration, or in writing, with or without new consideration." "In general, a written release extinguishes an obligation covered by the release's terms, provided it has not been obtained by fraud, deception, misrepresentation, duress, or undue influence." *Skrbina v. Fleming Cos., Inc.*, 45 Cal. App. 4th 1353, 1366 (1996). As discussed above, plaintiffs acknowledge that they signed the releases with full knowledge of the circumstances, including Verizon's severance cap and the severance amounts being offered, and that legal counsel assisted them. Because the severance

11

releases are in writing, no new consideration was required. Cal. Civ. Code § 1541.

The allegations in the FAC do not support plaintiffs' claim that the releases lacked consideration and are therefore unenforceable.

### F. Leave to Amend

"Where the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, '[t]he district court's discretion to deny leave to amend is particularly broad.'" *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009), *as amended* (Feb. 10, 2009) (quoting *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1097–98 (9th Cir. 2002)). The Court has already afforded plaintiffs leave to amend to add allegations of economic duress, but plaintiffs have again failed to adequately plead facts to support their claim. Plaintiffs do not seek leave to amend, nor did they indicate in their opposition brief or at the hearing that there were any additional facts they could possibly plead to overcome the FAC's factual deficiencies if given leave to amend.[5] In their opposition brief and at the hearing, plaintiffs acknowledged that they did not face imminent financial ruin, in part, because they had access to unemployment insurance and retirement savings accounts. Dkt. No. 32 at 12–13; Dkt. No. 35. It appears, therefore, that plaintiffs cannot possibly plead the requisite elements of economic duress. In these circumstances, the Court concludes that granting further leave to amend would be futile. *Rivera v. BAC Home Loans Servicing, L.P.*, 756 F. Supp. 2d 1193, 1197 (N.D. Cal. 2010) ("[W]hen amendment would be futile, dismissal may be ordered with prejudice."); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) ("[A] district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts.") (quoting *Doe v. United States,* 58 F.3d 494, 497 (9th Cir. 1995). Accordingly, the Court dismisses the FAC without leave to amend.

---

[5] Plaintiffs suggest that their claim of economic duress might be borne out by discovery. Dkt. No. 32 at 17. But plaintiffs must first clear the hurdle of adequately stating a claim before they are permitted to proceed to discovery on that claim. *Twombly*, 550 U.S. at 563 n.8 ("[B]efore proceeding to discovery, a complaint must allege facts suggestive of illegal conduct."); *see also Optical Coating Lab., Inc. v. Applied Vision, Ltd.*, No. C-92-4689 MHP, 1995 WL 150513, at *4 (N.D. Cal. Mar. 20, 1995) ("Discovery cannot, however, serve as a substitute for an adequate pleading . . . .").

## IV. CONCLUSION

For the foregoing reasons, the Court grants Verizon's motion to dismiss without leave to amend. The initial case management conference scheduled for September 3, 2019 is VACATED. The parties' stipulated request to continue the case management conference and Verizon's request to appear telephonically are denied as moot. Dkt. Nos. 34, 39. The Clerk of the Court shall close the file.

**IT IS SO ORDERED.**

Dated: August 29, 2019

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge